IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dwight Guyot,<br><br>　　　　Petitioner,<br><br>vs.<br><br>C.J. DeRosa,<br><br>　　　　Respondent. | No. CV 04-1992-PHX-JWS (ECV)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE JOHN W. SEDWICK, UNITED STATES DISTRICT JUDGE:

**BACKGROUND**

Pending before the court is Petitioner Dwight Guyot's *pro se* Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2241. Petitioner was convicted of a drug offense on August 24, 2000 in the Northern District of Florida. He was sentenced to 180 months in prison followed by five years of supervised release. In September 2002, while Petitioner was incarcerated at the Federal Correctional Institution ("FCI") in El Reno, Oklahoma, he was charged with a disciplinary violation for using the telephone to further criminal activity. After a hearing before a Disciplinary Hearing Officer (DHO) on September 26, 2002, the DHO found that Petitioner committed the prohibited act. As a sanction, the DHO imposed disciplinary segregation for 60 days and the loss telephone privileges for 365 days. Additionally, Petitioner lost 41 days of good conduct time, thus affecting the length of his sentence. Petitioner filed an administrative appeal, after which the

1 DHO was directed to reconsider the evidence in the case and amend the DHO report to
2 further support the conclusion. The DHO reconsidered the evidence on June 12, 2003, and
3 again found Petitioner committed the prohibited act. The DHO issued an amended hearing
4 report and imposed the same sanctions. Petitioner's subsequent administrative appeals were
5 unsuccessful. Petitioner was transferred to FCI-Phoenix in December 2003. He filed the
6 instant habeas petition on September 22, 2004.

## DISCUSSION

8 In the petition, Petitioner alleges that his disciplinary proceeding violated the Due
9 Process Clause. Specifically, he alleges that because prison officials had information that
10 he was incompetent at the time of the disciplinary hearing, he should not have been subjected
11 to such a hearing. Petitioner further alleges that prison officials interfered with his ability to
12 seek administrative review of the disciplinary decision. Petitioner also filed a Memorandum
13 of Law in Support of Petition (Doc. #3) in which he further explains these allegations.
14 Petitioner also alleges in the memorandum that the DHO was not impartial because she
15 participated in the investigation of the charge against him.[1] Petitioner is seeking the
16 reinstatement of the 41 days of good conduct time that were taken from him.

17 Respondent filed an Answer to Petitioner's Request for a Writ of Habeas Corpus (Doc.
18 #9) on November 15, 2004. Respondent first contends that the petition should be dismissed
19 because Petitioner failed to exhaust his administrative remedies. Regarding the merits,
20 Respondent argues that Petitioner received the procedural protections required by the Due
21 Process Clause and that Petitioner has not established that he was not competent to
22 participate in the disciplinary proceedings.

---

[1] Petitioner later filed a Motion to Amend Memorandum of Law in Support of Petition (Doc. #15) in which he contends that his due process rights were further violated when he was not notified or permitted to attend the rehearing after the DHO was directed to reconsider the evidence. The motion to amend will be addressed in a separate order.

- 2 -

**A.     Exhaustion of Administrative Remedies**

Before pursuing habeas relief under 28 U.S.C. § 2241, a petitioner must exhaust administrative remedies through the Bureau of Prisons. Fraley v. U.S. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993). "Exhaustion is not required if pursuing those remedies would be futile." Id. Respondents argue that the futility holding in Fraley is undermined by Booth v. Churner, 532 U.S. 731 (2001), and Porter v. Nussle, 534 U.S. 516 (2002). However, Booth and Porter address exhaustion of administrative remedies under a provision in the Prison Litigation Reform Act ("PLRA"). The PLRA provision requires exhaustion of administrative remedies for actions "brought with respect to prison conditions under section 1983 of this title, or any other Federal law...." 42 U.S.C. § 1997e(a). Ours is not a "prison conditions" case and the exhaustion provision of the PLRA does not apply. See Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001). Thus, any cases interpreting that provision are inapposite.

Here, Respondent's documents show that on July 23, 2003, Petitioner filed an administrative appeal of the DHO's amended report. Doc. #9, Exh. 5 at 1-2. On September 23, 2003, a Regional Director denied Petitioner's appeal. Doc. #9, Exh. 5 at 3. Petitioner states that he did not receive the denial of his appeal and he later learned that the staff had given the response to an inmate in the general population. Doc. #3 at 4. After he was transferred to FCI-Phoenix in December 2003, Petitioner sought assistance from prison staff to find out what happened with his appeal. Id. Petitioner states he received no assistance, only interference. Id. Petitioner presents documents showing he filed a Central Office Appeal on August 2, 2004. Doc. #3, Exh. 2. The appeal was denied as untimely because it was not filed within 30 days of the Regional Director's response. Id. Respondent presents no information to refute Petitioner's contention that he did not receive the Regional Director's response.

The court finds that Petitioner has satisfied the exhaustion requirement. Petitioner filed an appeal of the amended hearing report but did not receive a response. He was then sent to a different federal prison in a different state. He requested assistance but was unable

1 to learn about the status of his appeal.  He then filed an appeal at the next level, the Central
2 Office, which was denied as untimely.  Petitioner attempted to comply with the rules for
3 administrative exhaustion but due to factors outside his control, he was unable to fully
4 comply with those rules.  Because he complied to the extent he could under the
5 circumstances, the court finds that he exhausted the administrative remedies that were
6 available to him and his claim will be addressed on the merits.

7 **B.     Merits of the Claim**

8 It is well-established that "[a] due process claim is cognizable only if there is a
9 recognized liberty or property interest at stake." Schroeder v. McDonald, 55 F.3d 454, 462
10 (9th Cir. 1995) (citing Board of Regents v. Roth, 408 U.S. 564, 569 (1972)).  Constitutionally
11 protected liberty interests for prisoners require an "atypical, significant deprivation" or a
12 deprivation that "will inevitably affect the duration of [their] sentence." Sandin v. Connor,
13 515 U.S. 472, 486-87 (1995).  Although the Constitution itself does not create a liberty
14 interest in credit for good behavior, a statutory system authorizing good time credits creates
15 such an interest in the shortened prison sentence that results from those credits. Sandin, 515
16 U.S. at 477-78 (citing Wolff v. McDonnell, 418 U.S. 539, 557 (1974)).  The minimum
17 requirements of procedural due process must therefore be observed to protect this interest.
18 Wolff, 418 U.S. at 558.

19 Procedural due process safeguards in prison disciplinary proceedings require that the
20 prisoner receive: (1) written notice of the charges, no less than twenty-four hours prior to the
21 hearing; (2) a written statement by the factfinders as to the evidence relied on and reasons
22 for the disciplinary action and (3) a limited right to call witnesses and present documentary
23 evidence when it would not be unduly hazardous to institutional safety or correctional goals
24 to allow the defendant to do so. Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974).  While
25 not an express holding, the Wolff Court also implied that a fair hearing requires an impartial
26 decisionmaker. Id. at 570-71.  Moreover, the  minimum requirements of procedural due
27 process do not permit the revocation of good time credits unless the disciplinary officer's
28

findings are supported by "some evidence" in the record. Superintendent v. Hill, 472 U.S. 445, 454 (1985).

Here, Petitioner contends that prison officials violated his due process rights by bringing disciplinary charges against him when he was incompetent. Petitioner argues that the DHO had access to his "Inmate Central File" which contains information showing he has a mental disability.[2] Doc. #3 at 6-7. Petitioner attached to his supporting memorandum a document titled "Program Review Report." Doc. #3, Exh. 1. A statement at the end of the document, which is dated July 28, 2004, provides that "[h]e is diagnosed as mentally retarded." Id. Petitioner contends that based on his condition the DHO was required to refer him to a mental health professional to determine if he was responsible for the charged conduct. Doc. #3 at 7.

Respondent asserts that the only evidence of mental retardation is Petitioner's own self-reporting to a probation officer during the preparation of his pre-sentence report. Respondent contends that the pre-sentence report also reflects Petitioner earned his General Equivalency Degree. Respondent, however, does not provide the court with a copy of the report and thus the court is unable to verify the information asserted.

Respondent further argues, however, that Petitioner never claimed he was mentally retarded or incompetent at the time of the hearing. Doc. #9 at 6. Respondent presents a declaration signed by the DHO stating that she was unaware Petitioner suffered from any type of mental illness or mental retardation. Doc. #14 at ¶ 4. The DHO explained that she had numerous contacts with Petitioner in her capacity as a case manager and that she never witnessed any behavior that would suggest a mental illness. Id. Respondent argues that prison staff are required to refer an inmate to mental health for a competency determination

---

[2] Petitioner states that the DHO was also his case manager and thus had access to all the information in his central file. The DHO states in her affidavit that she has served as a case manager at FCI - El Reno since 1989 but that she also completed the training and certification required to serve as a DHO. She explains that she periodically serves as an Alternate DHO as needed.

1  only if there is reason to believe the inmate is mentally ill during the disciplinary process.
2  Doc. #9 at 6 (citing 28 C.F.R. § 541.10(b)(6)).

3        The court finds that Petitioner has not demonstrated a due process violation based on
4  his alleged incompetency. Petitioner points to one document that states he was diagnosed
5  with mental retardation. Neither that document, nor any other evidence, indicates when that
6  diagnosis was made or by whom. Most importantly, Petitioner has presented no evidence
7  of any specific functional limitations. There is nothing in the record to show that Petitioner
8  had any difficulty understanding or participating in the disciplinary proceedings. The DHO,
9  who also dealt with Petitioner in her capacity as a case manager, knew of no such limitations
10 and thus had no reason to refer Petitioner for a competency determination. Petitioner's sparse
11 evidence regarding incompetency fails to establish a due process violation.

12       Petitioner's contention that the DHO was not impartial is also unsupported. Petitioner
13 contends that the DHO was not impartial because she "participated in the investigation of the
14 matter as a member of his Unit Team and during previous conversations with the Special
15 Investigations Supervisor J. Knight." Doc. #3 at 6. Petitioner offers no evidence to support
16 this allegation. The DHO states in her declaration that she did not participate in any aspect
17 of the investigation. Doc. #14 at ¶ 3. Absent any support for Petitioner's claim beyond his
18 own refuted statement, the court will recommend that it be rejected.

19 **C.     Conclusion**

20       The court finds that Petitioner satisfied the requirements of administrative exhaustion
21 and a decision on the merits is appropriate. Upon consideration of the merits, the court finds
22 that Petitioner has failed to establish a due process violation. Petitioner did not establish that
23 he should have been evaluated for incompetency or that the hearing officer was impartial.
24 For these reasons, the court will recommend that the Petition for Writ of Habeas Corpus be
25 denied and dismissed.

26

27 **IT IS THEREFORE RECOMMENDED:**

28

1    That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. #1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have ten days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgement entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

DATED this 22nd day of September, 2005.

_Edward C. Voss_
Edward C. Voss
United States Magistrate Judge

- 7 -